**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| JAMES D. ROBERTSON, # 5607,<br><br>Plaintiff,<br><br>v.<br><br>JOEL ANDERSON, DIRECTOR, SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, LYDELL CHESTNUT, DEPUTY DIRECTOR BROAD RIVER CORRECTIONAL SECURE FACILITY, DR. ANDREW HEDGEPATH, CHIEF OF PSYCHIATRY<br><br>Defendants. | Case No. 2:26-cv-3773-TMC-MGB<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff James D. Robertson respectfully submits this memorandum in opposition to Defendants' Motion to Dismiss (ECF No. 6). For the reasons set forth herein, the motion should be denied.

## INTRODUCTION

The Complaint pleads facts that satisfy both the objective and subjective prongs of the deliberate indifference standard as articulated by the United States Court of Appeals for the Fourth Circuit. Robertson's psychiatric conditions are serious medical needs, a point Defendants have not meaningfully contested, and the Complaint alleges that Defendants acted with actual knowledge of those conditions and chose a course of conduct that was both medically unacceptable under the circumstances, and in conscious disregard of the risks their decisions posed to Robertson's mental health.

Defendants' motion rests on three grounds, none of which withstands scrutiny. First, Defendants raise hypothetical arguments regarding individual capacity liability. Those arguments are misplaced, however, as Robertson seeks only prospective injunctive and declaratory relief, which is properly directed at officials acting in their official capacities. Second, Defendants request that two of the three named Defendants be dismissed as duplicative, which ignores the distinct role that each Defendant plays in the administration of SCDC's formulary policies and mental health staffing decisions. As such, each is a proper party to this action. Third, Defendants advance a merits based argument that inverts the standard governing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rather than accepting the well pleaded allegations as true and drawing all reasonable inferences in Robertson's favor, Defendants draw inferences against Plaintiff, rely upon matters outside the four corners of the pleadings, and cite out-of-circuit and unpublished authority that is not controlling.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint; it does not adjudicate the merits of the plaintiff's claims. In evaluating such a motion, the court must accept all well pleaded factual allegations in the complaint as true and must draw all reasonable inferences from those facts in favor of the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 275 S.Ct. 1955, 1964-65 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50 (2009). The Supreme Court of the United States has made clear that, while a complaint need not contain detailed factual allegations, it must set forth sufficient factual matter to state a claim to relief that is plausible on its face. A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*.

Importantly, the plausibility standard is not akin to a probability requirement. The complaint must contain enough factual content to nudge the claims across the line from conceivable to plausible. *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011).

**ARGUMENT**

## I. THE INDIVIDUAL CAPACITY ARGUMENTS ARE HYPOTHETICAL AND NOT DISPOSITIVE

### A. Robertson's Claims are Properly Asserted as Official Capacity

Defendants' first ground for dismissal is framed in hypothetical terms, addressing Robertson's claims only *insofar as* they might be construed as individual capacity claims. Robertson does not assert any individual capacity claims, however. (Motion at 4) (ECF No. 6). The Complaint seeks only declaratory and injunctive relief, forms of prospective relief that are properly pursued against state officials acting in their official capacities under the doctrine established in *Ex parte Young*, 209 U.S. 123 (1908). Under *Ex parte Young*, "suits that would otherwise be barred by a State's sovereign immunity may proceed when a plaintiff seeks forward-looking relief to halt an ongoing violation of federal law." *King v. Youngkin*, 122 F.4th 539, 542 (4th Cir. 2024).

The Complaint names each Defendant by title and institutional role and seeks prospective relief directed at changing ongoing unconstitutional practices within SCDC. This is precisely the type of claim that the *Ex parte Young* doctrine authorizes: a suit against state officers in their official capacities to enjoin continuing violations of federal law. Because Robertson's claims are official capacity claims seeking prospective relief, Defendants' extended discussion of individual capacity requirements is beside the point. The Court need not reach the individual capacity question at all, and Defendants' first ground for dismissal should be denied on that basis alone.

### B. Even if Construed as Individual Capacity Claims, the Complaint Adequately Alleges Personal Involvement

Even if the Court were to construe any of Robertson's claims as sounding in individual capacity, Defendants' personal involvement argument fails. The Complaint does not rely on generalized allegations of supervisory negligence or respondeat superior liability. Rather, it alleges that each Defendant – Director Anderson, as head of SCDC; Deputy Director Chestnut, as the senior official at Broad River Secure Facility; and Dr. Hedgepath, as Chief of Psychiatry – made or implemented specific administrative decisions that directly caused the constitutional injuries at issue. Those decisions include the removal of Seroquel IR from the SCDC formulary, the placement of that medication in a category that SCDC physicians are categorically prohibited from prescribing under any circumstance, and the rotation of mental health counselors in a manner that destroyed stable therapeutic relationships essential to Robertson's care. This is not a case of imputed liability based merely on a defendant's position within a chain of command. It is a case of direct policy-level involvement by each named Defendant.

The Fourth Circuit's framework for supervisory liability under Section 1983, as articulated in *Shaw v. Stroud*, recognizes that a supervisor may be held liable where the supervisor had actual or constructive knowledge of a pervasive risk of harm, where the supervisor's response to that risk was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinates' conduct, and where there exists a causal connection between the supervisory failure and the constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The Complaint's allegations satisfy each element of the *Shaw* framework.

The Fourth Circuit's recent decision, in *Edwards v. Witherspoon*, reinforces the conclusion that supervisory officials may be held personally liable for policy-level failures of this kind. *Edwards v. Witherspoon*, --- F.4th ---, 2026 WL 2661096 (4th Cir. 2026). There, the court held

that a reasonable jury could find a facility's warden deliberately indifferent based on her knowledge that institutional policies did not conform to governing correctional directives and her failure either to bring those policies into compliance or to ensure that her staff were adequately trained. *Id*. at *9. That conclusion rested on the official's own awareness of the deficient policies and her inaction in the face of that knowledge, not on any theory of vicarious liability. *Id.* The same reasoning applies to Director Anderson, Deputy Director Chestnut, and Dr. Hedgepath, each of whom is alleged to have known of and participated in the specific policy decisions that caused Robertson's injuries here.

**C. Defendants' Cite Authorities That are Not Persuasive or Applicable**

The authorities Defendants rely on to support of their personal involvement argument are unpersuasive for multiple independent reasons. As an initial matter, three of Defendants' principal citations – *Davidson v. U.S. Department of State*, 113 F. Supp. 3d 183 (D.D.C. 2015); *Hummel v. Minnesota Department of Agriculture*, 430 F. Supp. 3d 581 (D. Minn. 2020); and *Thayer v. Howard*, 2024 WL 1513514 (D. Kan. 2024) – are out-of-circuit district court decisions that are not binding here.

Defendants' published Fourth Circuit cases fare no better. *Kirby v. City of Elizabeth City*, 388 F.3d 440 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977); and *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985), all address the principle that respondeat superior alone is insufficient to establish Section 1983 liability. Robertson does not dispute that principle, but Robertson also does not rely on respondeat superior here. As such, those cases are inapposite. The Complaint alleges direct personal involvement by each Defendant in the formulation and implementation of the specific policies that caused Robertson's injuries. (Compl. at ¶¶ 10, 18) (ECF No. 1). The respondeat superior cases have no bearing on the adequacy of such allegations.

Finally, the unpublished decisions from this District cited by Defendants – *Ellerbe v. South Carolina Department of Corrections*, 2020 WL 3446202 (D.S.C. 2020), and *McFadden v. Fuller*, 2014 WL 26278 (D.S.C. 2014) are distinguishable. Both involved generalized allegations of supervisory negligence, which courts have found insufficiently vague and conclusory. Robertson's Complaint, by contrast, identifies the specific policy decisions made by each named Defendant, the specific harm those decisions caused, and the specific knowledge each Defendant possessed regarding the risks to Robertson's well-being. (Compl. at ¶¶ 7, 8, 17, 18) (ECF No. 1). The distinction between generalized supervisory negligence and direct policy-level involvement is dispositive, and Defendants' reliance on *Ellerbe* and *McFadden* is misplaced.

### D. In the Alternative, Leave to Amend Should be Freely Granted

If the Court were to conclude that some ambiguity exists regarding the capacity in which Defendants are sued, the appropriate remedy would be leave to amend under Rule 15(a)(2) of the Federal Rules of Civil Procedure, not dismissal with prejudice. The Fourth Circuit has consistently held that leave to amend should be freely given when justice so requires, and that dismissal with prejudice is strongly disfavored where the alleged deficiency is curable. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999). Any ambiguity in the capacity designation is a curable deficiency, and Robertson respectfully requests that the Court grant leave to amend in the event it finds any such ambiguity.

## II. RETAINING ALL THREE DEFENDANTS IS NECESSARY AND APPROPRIATE

Defendants argue that the official capacity claims against Deputy Director Chestnut and Dr. Hedgepath are duplicative of the claim against Director Anderson because all three are employees of the South Carolina Department of Corrections. This argument misapprehends the nature and scope of the injunctive relief that Robertson seeks.

It is true that, in certain circumstances, naming multiple officials in their official capacities can be redundant, such as where the claims against each official are identical and only one need be named for purposes of effectuating relief. That principle, however, does not apply where different defendants control different components of the relief sought. Here, each Defendant occupies a distinct position within the SCDC hierarchy and controls a distinct lever of the injunctive relief that Robertson requests. Director Anderson, as the head of SCDC, sets or approves agency-wide formulary policy and bears ultimate institutional responsibility for the decision to remove Seroquel IR from the formulary. Deputy Director Chestnut, as the senior official at Broad River Secure Facility, controls staffing decisions and counselor assignments at the facility level, the specific administrative decisions that destroyed the continuity of Robertson's counseling relationships. Dr. Hedgepath, as Chief of Psychiatry, controls prescribing authority and the clinical policy dimension of Robertson's care, including the determination of which medications may be prescribed to inmates with Robertson's diagnoses.

The injunctive relief Robertson seeks has two principal components: first, the restoration of access to Seroquel IR or an appropriate alternative such as Gabapentin; and second, the restoration of stable, continuous counseling relationships. These two components require action by different officials at different levels of the SCDC organizational structure. Director Anderson's authority over formulary policy does not extend to day-to-day counselor assignments at Broad River, and Deputy Director Chestnut's authority over facility staffing does not extend to agency-wide prescribing protocols. Dismissing Chestnut or Hedgepath from this action could therefore create gaps in the Court's ability to fashion complete and effective injunctive relief, because the Court might lack jurisdiction over the official whose cooperation is necessary to implement a particular component of its order.

Defendants rely principally on three decisions in support of their redundancy argument: *Human Rights Defense Center v. Carmichael*, 2019 WL 7288764 (W.D.N.C. 2019); *Love-Lane v. Martin*, 355 F.3d 766 (4th Cir. 2004); and *Hicks v. Halifax County Board of Education*, 93 F. Supp. 2d 649 (E.D.N.C. 1999). None of these decisions compel the result Defendants seek as each involves claims against officials whose roles and responsibilities overlapped to a degree that is not present here.

Finally, the marginal burden of retaining all three Defendants is negligible. Defendants effectively concede that their second ground for dismissal is not dispositive. They acknowledge that this case will proceed against Director Anderson in his official capacity regardless of the Court's ruling on this issue. The marginal burden of retaining Deputy Director Chestnut and Dr. Hedgepath as parties, who are already represented by the same counsel and who are already aware of this litigation, is negligible. That negligible burden must be weighed against the substantial risk that dismissing those Defendants could impair the Court's ability to craft complete injunctive relief addressing all components of Robertson's constitutional claims. Where the cost of retention is minimal and the cost of premature dismissal is potentially significant, the balance favors retaining all three Defendants in this action.

## III. THE COMPLAINT STATES A PLAUSIBLE CLAIM FOR DELIBERATE INDIFFERENCE

Defendants' central argument is that Robertson's deliberate indifference claim fails as a matter of law. This argument misapplies the legal standard, inverts the Rule 12(b)(6) framework, and ignores the specific factual allegations in the Complaint. The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976). In the Fourth Circuit, a plaintiff must satisfy two prongs: an objective prong showing a sufficiently serious medical condition, and a subjective prong showing that the

defendant acted with deliberate indifference to that condition. *See Gordon v. Schilling*, 937 F.3d 348 (4th Cir. 2019).

### A. The Objective Prong is Essentially Conceded

Defendants do not meaningfully contest that Robertson suffers from a serious medical need. Their own lead case on the merits, *Williams v. Branker*, 462 F. App'x 348 (4th Cir. 2012), assumed that the inmate's mental health condition was serious for purposes of its analysis. The Fourth Circuit has consistently recognized that "a medical condition is serious when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gordon v. Schilling*, 937 F.3d at 356.

Robertson was diagnosed with significant psychiatric illness before his incarceration, those diagnoses were confirmed during his incarceration, and he has been dependent on institutional psychiatric care throughout his time in SCDC custody. (Compl. at ¶ 7) (ECF No. 1). His mental health has deteriorated to the point where he has actively sought to be executed, a fact that underscores the severity of the need. *Id*. at ¶ 11. The objective prong is satisfied as a matter of law, and Defendants' motion does not seriously argue otherwise. The Fourth Circuit recently reaffirmed the governing standard in *Edwards v. Witherspoon*, recognizing that a medical condition diagnosed before incarceration as requiring treatment readily satisfies the objective component of an Eighth Amendment deliberate-indifference claim. 2026 WL 2661096 at *14

### B. The Complaint Alleges Defendants Acted with Conscious Disregard of Excessive Risk, Which Satisfies the Subjective Prong

The subjective prong requires that the official knew of and disregarded an excessive risk to the inmate's health or safety, a standard equivalent to subjective recklessness. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). A prison official may be deliberately indifferent where the official's response to a known risk was so inadequate that it constituted an intentional disregard of

the risk. The critical distinction in this case, and the one Defendants avoid, is between a dispute among medical professionals about the proper course of treatment and an administrative decision, untethered to any medical judgment, that strips a patient of effective treatment.

The Complaint alleges that Defendants removed Seroquel IR from the formulary without the recommendation of any healthcare provider and without any specific evidence of abuse. (Comp. at ¶ 17) (ECF No. 1). This allegation places this case squarely within the category of cases where prison officials chose a course of action that was medically unacceptable under the circumstances and did so in conscious disregard of the risk it posed. *See DePaola v. Clarke*, 884 F.3d 481 (4th Cir. 2018) (holding district court erred in dismissing Depaola's mental health claims of deliberate indifference).

The Ninth Circuit confronted materially identical facts in *Porretti v. Dzurenda*, 11 F.4th 1037 (9th Cir. 2021). In that case, a Nevada inmate with serious mental illnesses had been receiving Wellbutrin and Seroquel IR (the same Seroquel formulation at issue here) before and during his incarceration, and correctional officials agreed the medications were appropriate and continued them. *Id.* at 1043. Subsequently, officials stopped providing the medications pursuant to a new administrative policy, without any healthcare provider's recommendation, and purportedly due to abuse risk, though the plaintiff alleged the real reason was financial. *Id.* The substitute medications caused serious side effects, forcing the inmate to choose between those side effects and untreated psychosis. *Id*. The district court granted a preliminary injunction, and the Ninth Circuit affirmed, holding that deliberate indifference exists where officials stopped effective medication because of an administrative policy rather than a medical judgment. *Porretti*, 11 F.4th 1037, 1045-46 and 1052 (9th Cir. 2021).

The parallels are striking: the same drug (Seroquel), the same mechanism (administrative formulary change without provider recommendation), the same absence of evidence of abuse, and the same harm language (very serious or extreme damage to mental health). While *Porretti* is Ninth Circuit authority and therefore only persuasive, its reasoning is fully consistent with binding Fourth Circuit law. *See Edwards*, 2026 WL 2661096; *Scinto v. Stansberry*, 841 F.3d 219 (4th Cir. 2016) (confirming claim may proceed where the course of treatment, while not a complete absence of care, was so inadequate as to constitute deliberate indifference).

Here, Robertson does not merely allege that he prefers one formulation of quetiapine over another. He alleges that Defendants affirmatively removed a medication that was effectively treating his serious psychiatric illness, replaced it with a formulation that caused adverse side effects and did not provide the same therapeutic benefit, and did so without any medical recommendation purely as an administrative decision. (Compl. at ¶¶ 11, 17) (ECF No. 1). When Robertson tried the substitute and found it inadequate, his only remaining option was to forgo psychiatric medication entirely, which led to the catastrophic deterioration of his mental health. (Compl. at ¶ 11) (ECF No. 1). That is not a difference of medical opinion; it is the absence of medical judgment altogether.

These principles have now been reinforced by binding Fourth Circuit authority directly on point. In *Edwards v. Witherspoon*, prison medical officials enforced a categorical policy that denied a particular course of medication to an entire class of inmates without any individualized assessment of the affected prisoner's medical need. *Edwards*, 2026 WL 2661096 at *15. The Court of Appeals held that strict adherence to such a blanket policy does not relieve officials of their constitutional obligations, and that a factfinder could conclude that the categorical denial of medically indicated treatment evinced a disregard for inmate well-being sufficient to establish

deliberate indifference. *Id.* at *15. The court further held that an official's provision of some alternative treatment does not automatically satisfy the Eighth Amendment, because partial or substitute care that fails to meet the serious medical need is not necessarily constitutionally adequate. *Id.* at *16. Although *Edwards* arose in the context of medication for opioid use disorder, its reasoning governs here: Robertson alleges that Defendants removed Seroquel IR by categorical administrative fiat, placed it in a tier that no SCDC physician may prescribe under any circumstance, conducted no individualized assessment of his continuing need for the medication, and offered only a substitute formulation that proved therapeutically inadequate. If allegations of this kind were sufficient to defeat summary judgment in *Edwards*, they are more than sufficient to survive a motion to dismiss here.

### C. The Counseling – Continuity Theory Independently Supports the Claim

In addition to the medication claim, the Complaint alleges a separate basis for deliberate indifference: beginning in Fall 2024, Defendants made staffing changes and administrative decisions to frequently rotate mental-health counselors in and out of the facility where Robertson is housed, depriving him of the ability to establish stable, long-term therapeutic relationships with his counselors. (Compl. at ¶ 8) (ECF No. 1).

This theory is independently actionable. A deliberate decision to disrupt established therapeutic relationships – not because of any clinical determination that a change was warranted, but because of administrative staffing decisions – raises the same concerns as the medication theory. Principally, that officials chose a course of action that degraded the quality of care without any medical justification.

Robertson alleges that the frequent rotation of counselors has caused and continues to cause him harm. (Compl. at ¶ 8) (ECF No. 1). At the pleading stage, these allegations must be accepted

as true and all reasonable inferences drawn in Robertson's favor. The counseling continuity theory provides an independent basis for Robertson's Eighth Amendment claim, and Defendants' motion does not specifically address it.

**D. Defendants' Authorities Are Distinguishable**

Defendants claim a "mountain of controlling authority" mandates dismissal, but the mountain is largely composed of out-of-circuit and unpublished decisions that neither bind this Court nor address the facts alleged here.

First, a significant portion of Defendants' case citations come from outside the Fourth Circuit. *Davidson v. U.S. Dep't of State*, 113 F. Supp. 3d 183 (D.D.C. 2015); *Hummel v. Minnesota Dep't of Agric.*, 430 F. Supp. 3d 581 (D. Minn. 2020); *Thayer v. Howard*, 2024 WL 1513514 (D. Kan. 2024); *Forbes v. Edgar*, 112 F.3d 262 (7th Cir. 1997); *Tolentino v. Smucker*, 855 F. App'x 822 (3d Cir. 2021); *Bryant v. Wright*, 451 F. App'x 12 (2d Cir. 2011); *Boyett v. County of Washington*, 282 F. App'x 667 (10th Cir. 2008); *Perez v. County of Monroe*, 945 F. Supp. 2d 413 (W.D.N.Y. 2013); *Irby v. Sumnicht*, 683 F. Supp. 2d 913 (W.D. Wis. 2010); *Jackson v. Meachum*, 699 F.2d 578 (1st Cir. 1983); *Henderson v. Sheahan*, 196 F.3d 839 (7th Cir. 1999). None of these decisions is binding in the District of South Carolina, and many are unpublished opinions with no precedential value even in their home circuits.

Second, Defendants' key merits case within the Fourth Circuit is *Williams v. Branker*, 462 F. App'x 348 (4th Cir. 2012), which is also unpublished and more importantly, distinguishable. In *Williams*, the inmate did not allege that his "illness was ignored or that he was denied treatment, either altogether or even to a considerable extent." *Id.* at 354. To the contrary, he alleged "numerous stays in an inpatient psychiatric setting" and that the conditions of his confinement generally "amount[ed] to extreme deprivation because the isolation and behavioral restrictions"

that he was subjected to aggravated his mental illness. *Id.* The court, however, found that those generalized complaints while unfortunate, were the inevitable result of his incarceration and thus not actionable. *Id.* The same cannot be true here. For a period, Robertson received effective medication while incarcerated. As such, his specific condition is not the inevitable result of his incarceration, it is the direct result of an administrative decision made without any medical recommendation. (Compl. at ¶ 17) (ECF No. 1). The difference in the two cases is that one involves a provider exercising judgment about the nature of an inmate's treatment and the other involves an administrator eliminating a treatment option without consulting a provider. *Williams* does not govern the latter. *Williams v. Branker*, 462 F. App'x 348 (4th Cir. 2012).)

The Fourth Circuit's treatment of *Williams v. Branker* in its recent decision in *Edwards v. Witherspoon* also confirms that Defendants' reliance on *Williams* is misplaced. In *Edwards*, the defendants invoked *Williams* for the proposition that adverse effects on an inmate's health are an unfortunate but inevitable consequence of incarceration that does not offend the Constitution. *Edwards*, 2026 WL 2661096 at note 9. The Court of Appeals rejected that reading, explaining that *Williams* is confined to circumstances in which the conditions of confinement already satisfy the minimum requirements of the Constitution, such that any incidental impact on the inmate's health does not amount to a violation. *Id.* Where, by contrast, the challenged conduct itself inflicts a constitutional injury, *Williams* does not insulate the responsible officials. Robertson's allegations fall on the latter side of that line. He does not complain of an incidental deterioration attributable to the ordinary hardships of confinement, but of an affirmative administrative decision to strip him of effective medication without any medical justification. (Compl. at ¶ 17) (ECF No. 1). *See Edwards v. Witherspoon*, 2026 WL 2661096.

Third, Defendants rely on several cases involving inmates who rejected offered care or demanded a specific provider or drug under circumstances where a medical provider had exercised professional judgment. *Hawkins v. Allen*, 743 F. Supp. 3d 765 (E.D. Va. 2024), *Cooper v. Williams*, 2021 WL 3779633 (E.D. Va. 2021), *King v. United States*, 536 F. App'x 358 (4th Cir. 2013), and *De'lonta v. Johnson*, 708 F.3d 520 (4th Cir. 2013), all involve situations where the inmate disagreed with a treatment that a medical professional had chosen. Those cases stand for the proposition that a mere disagreement with the course of treatment does not rise to a constitutional violation – but only where both the patient's preferred course and the provider's chosen course reflect medically acceptable alternatives. That principle presupposes two competing medical judgments. Here, there is no competing medical judgment. The Complaint alleges that no healthcare provider recommended the removal of Seroquel IR and that the decision was purely administrative. (Compl. at ¶ 17) (ECF No. 1). When there is no medical judgment behind the challenged action, the "mere disagreement" defense represented by that line of cases does not apply.

Fourth, Defendants inject a pharmacological argument to suggest that the substitution was medically equivalent. Specifically, they claim that Seroquel IR and Seroquel XR contain the same active ingredient (quetiapine) and differ only in release mechanism. (Motion at 11) (ECF No. 6). This argument fails for two independent reasons. As a threshold matter, it relies on matters outside the pleadings that Defendants themselves concede are not before the Court on a motion to dismiss. Defendants acknowledge that the "legitimate penological reasons" for the formulary change are "outside the pleadings and therefore not before the Court." (Motion at 11, note 5) (ECF No. 6) The same is true of the pharmacological equivalence argument – the Complaint does not allege equivalence, and the Court may not consider Defendants' extrinsic assertions about the drugs'

composition without converting the motion to one for summary judgment under Rule 12(d). *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979). On the merits of the pleadings, the Complaint alleges the opposite: that Seroquel XR caused unwanted side effects, did not provide the same therapeutic benefit, and was not an acceptable substitute. (Compl. at ¶ 11) (ECF No. 1). At the 12(b)(6) stage, those allegations must be taken as true.

**E. Defendants' Attempt to Recast the Claim as Mere Negligence Fails**

Throughout their motion, Defendants attempt to recast Robertson's deliberate-indifference claim as a negligence or medical-malpractice claim, arguing that the Complaint at most alleges a disagreement about treatment. This framing is inconsistent with the allegations in the Complaint. It is well established that negligence is not sufficient to state an Eighth Amendment claim. Robertson does not allege negligence, however. He alleges that Defendants, with knowledge of his serious medical condition and dependence on Seroquel IR, made a deliberate administrative decision to remove that medication from the formulary in the absence of any recommendation by a medical provider and placed it in a category that cannot be prescribed under any condition. (Compl. at ¶¶ 10, 17) (ECF No. 1). Defendants persisted in this course even as Robertson's mental health deteriorated to the point where he sought to be executed. (Compl. at ¶ 11) (ECF No. 1). These allegations describe a conscious choice, not an inadvertent lapse in care.

The Fourth Circuit has drawn a clear line between negligence and deliberate indifference. The former involves an inadvertent failure to provide adequate medical care, while the latter involves a sufficiently culpable state of mind that amounts to deliberate indifference towards a serious medical need. *Gordon v. Schilling*, 937 F.3d 348, 357 (4th Cir. 2019). Robertson's allegations – that Defendants knew of his condition, knew the medication was effective, removed

it without medical recommendation, made it unavailable under any circumstance, and persisted in that course as his condition deteriorated – plausibly allege the latter. (Compl. at ¶¶ 10, 11, 17) (ECF No. 1). Whether the evidence ultimately establishes deliberate indifference or something less is a factual determination that is not appropriate for resolution on a motion to dismiss.

The Supreme Court has recognized that the Eighth Amendment protects against not only present harm but also an unreasonable risk of serious damage to future health. *Helling v. McKinney*, 509 U.S. 25 (1993). Robertson's allegation that his mental health has deteriorated to the point where he has actively sought execution, and that continued denial of effective treatment poses an ongoing and escalating risk, is precisely the type of future-harm allegation that *Helling* found actionable. (Compl. at ¶ 11) (ECF No. 1).

## IV. ADDITIONAL PROEDURAL AND SUBSTANTIVE WEAKNESSES IN DEFENDANTS' MOTION WARRANT ITS DENIAL

Several procedural and substantive deficiencies pervade Defendants' motion and independently warrant its denial. First, and most fundamentally, the motion repeatedly inverts the Rule 12(b)(6) standard. Rather than accepting the well-pleaded allegations in the Complaint as true and drawing all reasonable inferences in Robertson's favor, as *Twombly* and *Iqbal* require, Defendants characterize Robertson's factual allegations as "threadbare" and "not plausible," effectively asking this Court to weigh the evidence at the pleading stage. (Motion at 9, 10, 11) (ECF No. 6); *see Twombly*, 550 U.S. at 555-56 (2007); *Iqbal*, 556 U.S. at 678-79 (2009).

Second, Defendants rely on matters outside the pleadings to support their motion. They assert that there were "legitimate penological reasons" for the removal of Seroquel IR from the formulary and argue that Seroquel IR and Seroquel XR are pharmacologically equivalent because they share the same active ingredient. (Motion at 11) (ECF No. 6). Yet Defendants themselves concede that these matters are "outside the pleadings and therefore not before the Court on a

motion to dismiss." *Id*. at 11, note 5. A court considering a Rule 12(b)(6) motion may not consider extrinsic materials without converting the motion to one for summary judgment under Rule 12(d) and must provide all parties with a reasonable opportunity to present pertinent material. *Davis v. Zahradnick*, 600 F.2d at 460.

Third, Defendants draw inferences against the Plaintiff rather than in his favor. For example, they infer that because Seroquel IR and Seroquel XR share the same active ingredient, the substitution was medically adequate. The Complaint alleges the opposite, however. Specifically, Robertson alleges that the XR formulation caused unwanted side effects, did not provide the same therapeutic benefit, and was not an acceptable substitute. (Compl. ¶ 11). At the motion to dismiss stage, the Court must credit Robertson's version, not Defendants'. *E.I. du Pont de Nemours & Co*. 637 F.3d at 440.

Fourth, Defendants' motion to dismiss with prejudice is disproportionate even if the Court were to identify any pleading deficiency. The Fourth Circuit has consistently held that leave to amend should be freely given when justice so requires, and that dismissal with prejudice is inappropriate where the deficiency is curable by amendment. *Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999).) If the Court finds any ambiguity regarding the capacity in which Defendants are sued, or any lack of specificity regarding personal involvement, those are precisely the types of deficiencies that can be cured through amendment. Robertson should be afforded an opportunity to amend before any claim is dismissed.

Finally, Defendants' argument that exhaustion of administrative remedies bars this claim is unavailing. Robertson alleges that he has repeatedly inquired about the availability of Seroquel IR and has been told that it is no longer available under any circumstance and that any complaint or formal grievance would be futile. (Compl. at ¶ 13) (ECF No. 1). The Supreme Court has held

that exhaustion under the Prison Litigation Reform Act is an affirmative defense, not a pleading requirement, and is therefore generally unsuitable for resolution on a motion to dismiss. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910 (2007). The Fourth Circuit has likewise recognized that where an inmate alleges that the grievance process would be futile, the exhaustion defense cannot be resolved at the pleading stage. *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).)

**CONCLUSION**

For the foregoing reasons, Plaintiff James D. Robertson respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

*s/Jeremy C. Hodges*

Jeremy C. Hodges (Fed. ID No. 9238)
Jonathan Knicely (Fed. ID. No. 12103)
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
1320 Main Street, 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, South Carolina 29201
Telephone: (803) 799-2000
Email: jeremy.hodges@nelsonmullins.com
jonathan.knicely@nelsonmullins.com

*Attorneys for Plaintiff James D. Robertson*

Columbia, South Carolina

Dated: October 6, 2026.